IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ALLISON KLINGERMAN, an individual,

    Plaintiff,

V.

THE COUNTY OF BERRIEN, a public body corporate;
MARK HEYLIGER, an individual and Director of the
Berrien County Road Department;
EUGENE CASTO, an individual; and
RAYMOND PRZYBYLSKI, an individual,

    Defendants.

Case No.
Hon.

## COMPLAINT AND JURY DEMAND

Plaintiff, Allison Klingerman ("Klingerman"), by and through her attorneys, Demorest Law Firm, PLLC, sets forth her Complaint against Defendants the County of Berrien (the "County"), Mark Heyliger ("Heyliger"), Eugene Casto ("Casto"), and Raymond Przybylski ("Przybylski") (collectively, "the Defendants"), as follows:

## PARTIES

1. Klingerman is an individual who owns and resides with her partner of ten years, Ron McKie ("McKie"), at property located at 2237 Madron Lake Road, Buchanan, Michigan 49107 (the "Klingerman Property").

2. The County is a governmental agency, organized and incorporated under the laws of the State of Michigan, with its principal place of business located at 2860 Napier Avenue, Benton Harbor, Michigan 49022.

3. Heyliger is an individual who is the Director of the Berrien County Road Department and who owns and resides with his wife, Wendi Heyliger, at property located at 2140

Madron Lake Road, Buchanan, Michigan 49107, which is across the street from the Klingerman Property.

4. Defendant Eugene Casto owns and resides with his wife, Christiane Casto, at property located at 2234 Madron Lake Road, Buchanan, Michigan 49107 (the "Casto Property"), which is across the street from the Klingerman Property.

5. Defendant Raymond Przybylski owns and resides with his wife, Elizabeth Przybylski, at property located at 2190 Madron Lake Road, Buchanan, Michigan 49107 (the "Przybylski Property"), which is across the street from the Klingerman Property.

## JURISDICTION AND VENUE

6. This is a civil action arising under Michigan law, the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

7. This Court has subject matter jurisdiction over the claims arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

8. This Court has subject matter jurisdiction over the pendent claims stated in this Complaint arising under Michigan state law pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claim asserted herein as to form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this District under 28 U.S.C. § 1391(b). Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims made herein occurred in this District.

## GENERAL ALLEGATIONS

10. Klingerman purchased the Property on June 3, 2020 via a land contract and a Quit Claim Deed was recorded on September 19, 2024 (collectively attached as **EX 1**).

11. The Klingerman Property contains approximately 3.82 acres upon which Klingerman's residence sits.

12. At the time of purchase, the Klingerman Property's foundation, well, and septic system were all fully functional and in good condition.

13. Following her purchase of the Property, Klingerman completed a renovation of its interior.

14. A 16-inch corrugated steel culvert, which pre-dates Klingerman's purchase of the Property, runs beneath Madron Lake Road, draining water south-to-north from the Casto Property to the Klingerman Property (the "Culvert").

15. Upon information and belief, sometime in January, 2023 the County, through its road department (the "Road Department"), excavated two drainage ditches along the south side of Madron Lake Road which were designed and constructed to intentionally direct stormwater runoff to the Klingerman Property via conveyance through the Culvert (the "Ditches").

16. On February 9, 2023, Plaintiff noticed a significant amount of water flowing through the Culvert and beginning to flow onto her Property for the first time.

17. By late March, 2023, water began pooling at the back end of Plaintiff's Property causing flooding thereon.

18. Upon information and belief, sometime in or around May, 2024, Casto installed an approximately 4-inch diameter black polymer subsurface drain tile on the Casto Property (the "Drain Tile"), running from a gutter in front of the Castos' residence through the center of the front yard of the Casto Property, flowing northerly and directing groundwater/soil water and stormwater runoff directly to the Klingerman Property.

19. By early July, 2024, the pooling of water and flooding of Plaintiff's Property intensified.

20. Upon information and belief, sometime in the Summer of 2024, Przybylski excavated a pond at the Przybylski Property (the "Pond"), which began overflowing and directed stormwater to the Klingerman Property through the Ditches and Culvert.

21. During this same time period Plaintiff began to notice that the flooding was causing damage to her Property. Specifically, Klingerman's septic system began to malfunction, and structural issues began to arise throughout her home and yard, including: (a) the shifting of floors; (b) cracking of basement and other walls, windows and tile; (c) exterior doors failing to close properly; and (d) falling trees.

22. Also during the Summer of 2024, Klingerman and McKie began to experience harassment and intimidation at the hands of their neighbors: the Castos, the Przybylskis, and the Heyligers . Such harassment and intimidation included regular joint gatherings on the individual Defendants' front porches, during which these individual Defendants and their spouses pointed at and mocked Klingerman and McKie while, upon information and belief, discussing the events at issue is this case.

23. On March 31, 2025, Klingerman contacted the Road Department complaining about the flooding and structural damage to the Klingerman Property (**EX 2**).

24. On April 3, 2025, Superintendent Trail from the Road Department visited the Klingerman Property. He acknowledged that the Culvert was failing, but incorrectly claimed that the Ditches were pre-existing (i.e., existed before January, 2023). Superintendent Trail also informed Klingerman that the Castos and Przybylskis could not legally drain excess water into the Ditches and that he would inform them of same.

4

25. In connection with the preparation of his response to Klingerman's complaint to the Road Department, Heyliger sent an email to other County officials depicting Klingerman as having been aggressive with him and others in an apparent attempt to deflect responsibility from Defendants for their actions related to the flooding (**EX 3**).

26. Heyliger went so far as to prepare two memoranda, one that remained internal and included allegations of aggressive behavior against McKie (the "Internal Memorandum") and another that was sent as the official response to Klingerman (the "Official Memorandum"). The Internal Memorandum mentioned an alleged incident completely unrelated to this matter from 2024 where no charges were filed and McKie's alleged aggressive interaction with Superintendent Trail during his April 3, 2025 visit to the Klingerman' Property (**EX 4**).

27. On behalf of the Road Department, Heyliger sent a copy of the Official Memorandum, titled as "Memorandum of Record" and dated April 10, 2025, to Klingerman stating that: (a) at their April 2, 2025 meeting, Superintendent Trail explained to Klingerman that the Ditches existed for many years and had remained unaltered aside from recent maintenance; (b) after their April 2, 2025 meeting, Superintendent Trail determined that the Ditches and Culvert did not cause the flooding issues at the Klingerman Property; and (c) no further action would be taken by the Road Department (**EX 5**).

28. Grobbel Environmental & Planning Associates completed a site evaluation and assessment of stormwater conditions at and in the vicinity of the Klingerman Property and issued its report on May 9, 2025 (the "Grobbel Report") (**EX 6**).

29. The Grobbel Report determined that the actions of Defendants described above resulted in flooding, soil erosion, and property damage at the Klingerman Property, including

home foundation subsidence and cracking, as well as malfunction of and likely eventual failure of the septic system (**EX 6,** p. 3).

30. The Grobbel Report was sent to Heyliger and other County officials on June 19, 2025.

31. On June 24, 2025, the Road Department sent a letter to Klingerman in response to the Grobbel Report, disputing the conclusions in the Report and disclaiming responsibility for the flooding, soil erosion, and property damage detailed in the Grobbel Report (**EX 7**).

32. On August 15, 2025, Defendants' attempts to intimidate Klingerman and McKie heightened when Christiane Casto solicited police assistance when Klingerman was recording drainage related to the flooding. With Eugene Casto, Elizabeth Przybylski, Heyliger and Wendi Heyliger as complainants, McKie was charged for disturbing the peace. However, this charge was later dismissed by the Berrien County Trial Court for lack of evidence (**EX 8**).

33. Don Goulooze ("Goulooze") from the Road Department visited the Klingerman Property on September 30, 2025 and acknowledged that, contrary to Heyliger's contention as expressed in the Road Department's April 10, 2025 Memorandum of Record, the Ditches were not pre-existing. He also confirmed that the Castos and Przybylskis could not legally drain excess water into the Ditches and that the Culvert was failing. Goulooze also indicated that an emergency request would be made to have the Culvert repaired.

34. On October 27, 2025, Klingerman's attorney sent a letter to Defendants with a copy of the Grobbel Report, notifying Defendants of their potential liability for the damage that the flooding had caused to the Klingerman Property (the "Demand Letter") (**EX 9**).

35. The Road Department responded to the Demand Letter on November 7, 2025, disputing the allegations contained in both the Demand Letter and the Grobbel Report and

6

expressly denying liability for damages to the Klingerman Property. They advised that they were investigating the condition of the Culvert (**EX 10**). However, to date, no action has been taken to repair the Culvert.

36. Following receipt of the Demand Letter, the Przybylskis' insurance carrier (Foremost Insurance Company) initiated contact with Klingerman's attorney on November 20, 2025 (**EX 11**). Foremost Insurance Company subsequently asked for, and was granted, permission to send their retained expert, Michigan Consulting and Environmental ("MCE"), to the Klingerman Property to perform an investigation and issue a report on this matter. However, to date, MCE has not visited the Klingerman Property.

37. To date, the Castos have not responded to the Demand Letter.

38. The flooding continues and the Klingerman Property continues to deteriorate and suffer damage, including: (a) basement flooding; (b) foundation instability; (c) structural shifting; (d) mold accumulation; and (e) septic system failure.

39. To date, Defendants have refused to remedy the flooding caused by their actions.

40. The individual Defendants and their spouses also persist in their coordinated efforts to intimidate Klingerman, including (a) making obscene gestures towards Klingerman and McKie; (b) driving their vehicles toward and extremely close to McKie for no legitimate reason; and (c) otherwise acting in an aggressive manner toward Klingerman and McKie.

## COUNT I

### INVERSE CONDEMNATION—PERMANENT DE FACTO TAKING UNDER MICHIGAN AND FEDERAL LAW
(Against the County)

41. Klingerman hereby incorporates by reference Paragraphs 1 through 40 of the Complaint, as though fully set forth herein.

42. The Ditches installed by the County have caused the repeated flooding of the Klingerman Property.

43. The flooding caused by the Ditches has substantially damaged the Klingerman Property and disrupted the beneficial use of the Klingerman Property to such an extent as to constitute a total and permanent taking of the Klingerman Property.

44. As a result of the taking caused by the flooding, the County has interfered with and/or denied Klingerman the use and/or enjoyment of the Klingerman Property and substantially decreased its value.

45. The County's interference with the use of the Klingerman Property has interfered with Klingerman's property rights to such an extent that the County has effectively taken the Klingerman Property.

46. The County designed and constructed the Ditches to intentionally direct stormwater runoff to the Klingerman Property via the Culvert.

47. The County knew, or should have known, that the repeated flooding of the Klingerman Property would occur as a result of its installation of the Ditches.

48. As a result of the County's actions in interfering with the use of the Klingerman Property, the County has inversely condemned the Klingerman Property.

49. The County may not take the Klingerman Property without payment of just compensation to Klingerman.

50. Klingerman is entitled to recover compensation from the County for the County's taking of the Klingerman Property pursuant to Michigan law, the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

WHEREFORE, Klingerman respectfully requests that this Court:

    a.    Enter a Judgment determining that the County has inversely condemned the Plaintiffs' Property as of the date of taking determined by the jury;

    b.    Award Klingerman just compensation for the taking of her property rights by the County; and

    c.    Award Klingerman her costs, interest, consultant fees, expert witness fees, court costs, and attorney's fees as allowed by law.

## COUNT II

### TEMPORARY TAKING UNDER MICHIGAN AND FEDERAL LAW
### (Against the County)

51. Klingerman hereby incorporates by reference Paragraphs 1 through 50 of the Complaint, as though fully set forth herein.

52. The Ditches installed by the County have caused the repeated flooding of the Klingerman Property.

53. The flooding caused by the Ditches has substantially damaged the Klingerman Property and disrupted the beneficial use of the Klingerman Property to such an extent as to constitute a temporary taking of the Klingerman Property.

54. As a result of the taking caused by the flooding, the County has interfered with and/or denied Klingerman the use and/or enjoyment of the Klingerman Property and substantially decreased its value.

55. The County's interference with the use of the Klingerman Property has interfered with Klingerman's property rights to such an extent that the County has taken the Klingerman Property.

56. The County designed and constructed the Ditches to intentionally direct stormwater runoff to the Klingerman Property via the Culvert

57. The County knew, or should have known, that the repeated flooding of the Klingerman Property would occur as a result.

58. As a result of the County's actions in interfering with the use of the Klingerman Property, the County has inversely condemned the Klingerman Property.

59. The County may not take the Klingerman Property without just compensation.

60. Klingerman is entitled to recover compensation from the County for the County's taking of the Klingerman Property pursuant to the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Klingerman respectfully requests that this Court:

    a. Enter a Judgment determining that the County has inversely condemned the Klingerman Property as of the date of taking determined by the jury;

    b. Award Klingerman just compensation for the taking of her property rights by the County; and

    c. Award Klingerman her costs, interest, consultant fees, expert witness fees, court costs, and attorney's fees as allowed by law and 42 U.S.C. § 1983.

## COUNT III

### TRESPASS
### (Against All Defendants)

61. Klingerman hereby incorporates by reference Paragraphs 1 through 60 of the Complaint, as though fully set forth herein.

62. As described above, Defendants have, through their actions of installing the Ditches, installing the Drain Tile, and excavating the Pond, intentionally directed groundwater/soil water and stormwater runoff from the Casto Property and Przybylski Property onto the Klingerman Property.

63. Defendants' actions have caused repeated flooding of and damage to the Klingerman Property.

64. Defendants' direction of water onto the Klingerman Property is an unauthorized direct or immediate intrusion of physical, tangible object onto land over which Klingerman has a right of exclusive possession.

65. Defendants are therefore liable for trespass on the Klingerman Property.

WHEREFORE, Klingerman respectfully requests that this Court enter an Order:

    a. Enjoining Defendants from further trespass;

    b. Requiring Defendants to take corrective action and restore their properties (and the excavated ditches in the case of the County) in such a way as to cease the flooding on Plaintiffs' Property; and

    c. Award Klingerman her damages, costs, interest, consultant fees, expert witness fees, court costs and attorney's fees.

## COUNT IV

### NUISANCE PER SE
### (Against All Defendants)

66. Klingerman hereby incorporates by reference Paragraphs 1 through 65 of the Complaint, as though fully set forth herein.

67. Defendants' installation of the Ditches and the Drain Tile, as well as their excavation of the Pond, have caused a hazardous and dangerous condition related to the flooding of the Klingerman Property. Such a condition was unreasonable by its very nature at all times and under any circumstances and constitutes a nuisance *per se*.

68. Defendants' actions creating the nuisance *per se* are intentional or reckless.

69. As a direct and proximate result of Defendants' conduct, Klingerman has suffered substantial damage, including: (a) diminution of the value of the Klingerman Property; (b) damage to and deterioration of the Klingerman Property and their possessions; (c) disruption of

Klingerman's life and general emotional distress; and (d) loss of enjoyment of the Klingerman Property.

    WHEREFORE, Klingerman respectfully requests that this Court enter an Order:

    a.    Enjoining Defendants from continuing the nuisance *per se* activities;

    b.    Requiring Defendants to take corrective action and restore their properties (and the excavated ditches in the case of the County) in such a way as to cease the flooding on the Klingerman Property; and

    c.    Award Klingerman her damages, costs, interest, consultant fees, expert witness fees, court costs and attorney's fees.

## JURY DEMAND

Klingerman hereby demands a trial of this matter by jury.

    Respectfully submitted,

    DEMOREST LAW FIRM, PLLC

    By: /s/ *Mark S. Demorest*
    Mark S. Demorest (P35912)
    Randall J. Soverinsky (P51815)
    Attorneys for Plaintiff
    514 S. West St., Suite 300
    Royal Oak MI 48067
    (248) 723-5500
    mark@demolaw.com
    randy@demolaw.com

Dated: February 6, 2026

## **INDEX OF EXHIBITS**

1      June 3, 2020 Land Contract and September 19, 2024 Deed

2      March 31, 2025 Service Request

3      April 7, 2025 Heyliger e-mail

4      April 7, 2025 Internal Memorandum

5      April 10, 2025 Official Memorandum

6      May 9, 2025 Grobbel Report

7      June 24, 2025 Road Department letter

8      October 9, 2025 Order of Dismissal

9      October 27, 2025 letter to Defendants

10     November 7, 2025 Road Department response letter

11     November 20, 2025 Foremost Ins. Co. e-mail

Klingerman, Allison/Drainage Issues (2027)/2026 01 14 Complaint .docx